ERNEST KLABUNDE, APPELLANT, V. BYRON REED COMPANY, APPELLEE.*

FILED MAY 20, 1903. No. 12,846.

Dismissal for Want of Equity. Record examined, and the findings of the trial court sustained, and its judgment, dismissing plaintiff's action for want of equity, approved.

APPEAL from the district court for Douglas county: CHARLES T. DICKINSON, DISTRICT JUDGE. *Affirmed.*

*W. M. Morning* and *George W. Berge,* for appellant.

*Hall & McCulloch* and *J. J. O'Connor, contra.*

GLANVILLE, C.

This is an appeal from the judgment of the district court for Douglas county dismissing the plaintiff's action upon a general finding for the defendant, with the finding that the claim of the petitioner as set out in his petition is without equity. The petition of the plaintiff covers some fifteen pages and no good purpose would be subserved by copying the same. The bill of exceptions contains 338 pages.

The earnestness of the attorney for the plaintiff, manifested in his brief and oral argument, has helped to give us an interest in the case and rendered its examination less tedious than it might otherwise have been.

The action is one in equity to secure the vacation of a decree of foreclosure, in an action brought by the defendant against the plaintiff and others, affecting lands in Douglas county, and for a new trial in said action. Much is set up in the petition that we need not refer to; suffice it to say that the plaintiff claims that the mortgage sought to be foreclosed was never given by himself; that another mortgage which was found to be a lien prior to

---

* Rehearing allowed. See opinion, p. 126, *post.*

that of the plaintiff, had been given to the plaintiff for a much greater sum than was due; that he never knew that the action, in which the decree sought to be set aside was rendered, was one for the foreclosure of any mortgage; that he was induced by the defendant in this action to employ the same attorney who filed the petition for the foreclosure, and that he supposed the only issue litigated in that action was between himself and his son August.

It seems that the plaintiff's wife had originally owned the property and had died, devising the same to the son August, with the provision in the will that it should constitute a mortgage in favor of the plaintiff to secure the payment to him, from his son, of the sum of $150 annually, and a home and board, both to continue during life. Trouble had arisen between the plaintiff and his son, and the plaintiff was desirous of securing his rights under the will, or else of breaking the will, and obtaining possession of the land. Soon after the service of summons upon the plaintiff in the foreclosure action, the plaintiff, who is an elderly German, and claims not to be able to speak or understand English, went to the office of the defendant company, with a friend to act as interpreter; the visit resulted in a subsequent visit to the attorney who had filed the petition upon the mortgage. The plaintiff claims that a contract was made between himself and the defendant, through the attorney; that the defendant was to help him in securing relief against his son, and that defendant would eventually take the land and pay him the sum of $2,800, in instalments of $250 each year. That the payments were to be made in some way through the court, and that he was to go to the court house each year and get his money, and that a contract or paper was drawn by the attorney to that effect.

It appears that the attorney drew up an answer for the plaintiff, which was filed in the foreclosure action, admitting the giving of the mortgage sought to be foreclosed and the existence of the prior mortgage which the plaintiff now claims to have been fraudulent, and which answer set up, very properly, the plaintiff's claim of a lien upon the prem-

ises by virtue of the will above mentioned, claiming a lien for $150 a year on account of the money payment directed, and $100 a year for home and board, which had been refused him by his son. Another item in this answer, which will hereafter appear to be significant, is an admission of the existence of a mortgage subject to the one being foreclosed.

We are fully satisfied from the evidence, that this answer is the paper which the plaintiff now seems to believe constitutes a contract, that he should get his money from the court house in sums of $250 each year.

During the examination of the plaintiff as a witness in this action, the following evidence was given in regard to what took place between him and a Mr. Reed, representing the defendant company:

Q. Was there anything said as to how much you should have out of the land?

A. Yes.

Q. What was said?

A. He says (this is the language of the interpreter), Mr. Reed had a $3,100 mortgage on the land, he says some cents, he don't how much.

By Mr. O'Connor: Q. Give us what he said:

A. He said that Mr. Reed said he had a mortgage of $3,100 and some cents on the land, he further says, there was still $2,800 would remain for him. $2,800 would be left for him.

In answer to another question he said:

A. He was to have $300 and that was to be paid $300 per annum and that was to be paid into the court house for him.

In answer to another question, this was given:

A. He says he would be satisfied with $250 per annum.

Q. What did (naming the attorney) say to you?

A. He says he drew up a paper that he was to have $250 per annum, and that he was to get that at the court house.

Q. Now did (naming the attorney) write that down on paper, that you should have $250 each year and get it at the court house?

A. He says he read it to him from the paper.

Q. Did he ask you to sign the paper?

A. He says yes.

Q. Did you sign it?

A. He says he made a cross.

Q. Did he give you that paper or a copy of it?

A. No. He says he kept the papers.

Q. Do you know where it is?

A. He says he does not know where it is. It is supposed to be in the court house, or should be in the court house.

There can be no doubt that the paper referred to is his answer; he signed the verification by his mark, and the prayer contains the words "and should any surplus remain, that the same shall be retained by this court to pay this defendant any amounts accruing to him by reason of his lien on said premises as aforesaid."

The theory upon which the answer was drawn is, that any surplus remaining after the satisfaction of the mortgage, upon a sale of the property, would belong to the son, subject to the plaintiff's lien for the annual payments and the value of his home and support, and that the court would, in its decree, provide for annual payments of $250 each to the plaintiff. Afterward, the plaintiff employed another firm of attorneys to represent him in the case, and an amended answer was filed by them, which differed from the other answer, so far as the mortgages are concerned, only in the denial of the subsequent mortgage as one joined in by himself, and a claim of part payment of a small prior mortgage. His reason, as he claims, for securing the services of the other attorneys was, that one of them could speak German. They, alone, represented him thereafter to the end of the case.

We say, the fact, that this subsequent mortgage was admitted in the first answer and repudiated in the amended answer, is significant, because it shows conclusively that there must have been some talk between him and his new attorneys as to the action being one involving the mortgage liens. No claim is made either in the pleadings or the

evidence that his new attorneys were not fully competent; that they did not act in the best of faith; that he was induced to secure their services by the advice or suggestion of the defendant or that there was any collusion between them and the defendant.

The foreclosure suit was tried upon the issues made by the other pleadings and plaintiff's amended answer and resulted in a decree in favor of this plaintiff, subject to the lien of the mortgages admitted in his answer in the sum of $3,398.90, as a lump sum, equivalent to the annual payments due him and the value of home and board, based upon his expectancy under the Carlisle tables. In the decree the court found the value of the home and board secured by the will to be $150 per annum, instead of $100 as is claimed in both answers. Subtracting the difference which this made in the amount due, it would leave a little over $2,800 as plaintiff's claim, which is the amount he claims was to be coming to him, and the decree fixes the amount of prior liens at $3,125.25.

The court below refused to allow evidence to be introduced showing fraud in the inception of the mortgages. Of course such fraud could not alone justify setting aside the decree based on the mortgages because, "fraud in an antecedent transaction not connected with the judgment is not of itself sufficient." "Fraud which is available as a ground for avoiding a judgment by a court of equity, must have intervened in the action or proceeding in which the judgment was obtained." *Shufeldt v. Gandy,* 34 Neb. 32. Such evidence, however, may have been competent to show that the plaintiff had a good defense to the former action, and because of its exclusion we have refrained from discussing the question of the sufficiency of the evidence to show the existence of such defense.

Many things are complained of by the plaintiff which have no bearing upon his rights; much is said about his being informed by the defendant that the son, August Klabunde, had appealed the case, and that he did not find out that the appeal had not been perfected until it was too late

for the plaintiff herein to appeal. From the record it ap-
pears that the plaintiff obtained in that action the utmost
that could be given him under his own pleadings, and it is
evident that an appeal by himself was not contemplated.

Much stress is laid by the plaintiff's present counsel,
upon the fact that he is a German, aged, and somewhat en-
feebled in mind, and we suspect that these are reasons why
he is now mistaken about what took place between him
and the defendant and his attorneys during the pendency
of the foreclosure action.

There are many other things in the record and evidence
that have helped to lead us to the conclusion we have
reached, but no good would be accomplished by mentioning
them in this opinion.

We have examined the record and evidence with care,
aided by the briefs of counsel, and are satisfied that the
judgment of the lower court is right and should be affirmed.

The plaintiff no doubt was disappointed in the final
result of the former action, but we believe his interests
were looked after properly therein by all of his attorneys;
but if not, this court has held:

"A court of equity will not afford relief against a judg-
ment or decree obtained against a party through the neg-
ligence of his attorney." *Funk v. Kansas Manufacturing
Co.*, 53 Neb. 450.

The practice by attorneys of taking charge of the inter-
ests of parties on opposite sides of adversary proceedings
is not to be commended and, when there is any real contest
between the parties, can not be too severely condemned by
the courts; but it is not uncommon, or always improper,
for the same attorney to represent prior and subsequent
lien-holders in the same action, when there is no dispute as
to priority and amount.

We agree with the lower court in its findings, and rec-
ommend that the judgment appealed from be affirmed.

BARNES and ALBERT, CC., concur.

By the Court: The conclusions reached by the commissioners are approved, and it appearing that the adoption of the recommendations made will result in a right decision of the cause, it is ordered that the judgment of the district court be

AFFIRMED.

The following opinion on rehearing was filed January 21; 1904. *Former judgment vacated, and decree of district court reversed:*

1. **New Trial: EQUITY: THEORY OF CASE.** In an equitable action for a new trial, evidence offered for the purpose of proving the plaintiff had a substantial and meritorious defense in the prior action was objected to and excluded on the ground of irrelevancy and immateriality, and a ruling of the trial court procured limiting the evidence to the alleged ground of fraud, and the suit was tried upon that theory. *Held*, on appeal to this court from a judgment dismissing the suit, that it is proper to adopt the same theory in determining whether the plaintiff is entitled to a new trial and that, for the purpose of the case, it will be assumed that a valid and meritorious defense existed in his favor in the original action.

2. ———: ———: **FRAUD.** Equity will relieve against a judgment or decree on the ground of fraud, actual or constructive, committed by the successful party or where, from excusable neglect, a defendant has been prevented from interposing a meritorious defense or establishing grounds entitling him to affirmative relief in such action.

3. ———: ———. The plaintiff, a German advanced in years, illiterate and unable to speak or understand the English language, was made a defendant in a mortgage foreclosure proceeding, affecting land in which he had an equitable interest under the provisions of a will made by his deceased wife. After the commencement of the suit, he conferred with the plaintiff and, at its suggestion, counseled with its attorney who drew his answer asserting his equitable interest in the land but admitting that it was inferior to the plaintiff's under its mortgage; a decree was entered accordingly and the land sold for little more than enough to satisfy the prior lien. The defendant acted throughout the litigation under the belief, induced by the plaintiff and its attorney, that his interests and those of the mortgagee were harmonious and that he should secure the full amount due him under the provisions of the will by a sale of the land. *Held*, under the facts and circumstances as delineated in the opinion, that he was not culpably negligent in adopting the course pur-

sued and that the loss of substantial rights, by reason of his equitable interests in the land being fixed as a junior lien, was brought about from causes which render it proper for equity to intervene and grant a new trial.

HOLCOMB, C. J.

This cause, now submitted on rehearing, comes here by appeal from a judgment of the district court for Douglas county dismissing, for want of equity, plaintiff's suit begun in that court. For former opinion, see *Klabunde v. Byron Reed Co., ante,* p. 120. By the petition filed in the trial court, it is sought to obtain relief from a decree in foreclosure proceedings establishing in the mortgagee, plaintiff in that action, a lien on the real estate covered by the mortgage superior to the right and interest of the plaintiff, appellant, defendant in the foreclosure proceedings, who claims under the provisions of a will made by his deceased wife, who in her lifetime was the owner in fee of said premises. The pleadings are of too great length to be here reproduced. The petition or bill in equity is very lengthy, containing much of repetition, by way of argument, and matters properly to be introduced as evidence. The substance, however, of plaintiff's cause of action is to the purport and effect that by provisions of the will, under which he claims, he was the beneficiary of a trust estate in the real property devised by his wife for the purpose and with the object of providing for his support and maintenance during the remainder of his life, which was a first and paramount charge and lien on the real estate covered by the mortgage, under which the defendant company claimed and established its right in the foreclosure proceedings, theretofore by it instituted; that, in the foreclosure action, he was prevented from presenting a defense and deprived of the opportunity of doing so and of asserting his superior right and interest in and to such real estate, because of the wrongful action and conduct of the plaintiff in that action, its officers, agents and attorney, and that by such action and conduct, a fraud was perpetrated on him which

resulted in the loss of substantial and valuable rights, which otherwise he would have shown himself entitled to. He prayed to have the former decree vacated and set aside; that he might be permitted to plead further in that action; that a new trial be had, and that a decree be entered establishing his equitable interest in and to the real estate, as a charge thereon superior to that of the plaintiff and to any other lien appearing as a charge on such real estate. The answer traverses the allegations of the bill wherein a prior lien is asserted and especially those portions thereof asserting fraud as a ground for vacating the prior decree and granting a new hearing in the action. By the appeal, the whole record is brought to this court for trial *de novo*, and in the determination of the issues of fact, we are required to reach an independent conclusion from the evidence, uninfluenced by the finding and judgment rendered in the trial court. Sec. 681*a* of the code. Whether under the section cited, we should give any weight to the findings of the trial court, we will not stop here to consider as that question has not been presented or discussed and we feel able to dispose of the case to our satisfaction without determining to a nicety such question at this time.

At the commencement of the trial of the present suit in the lower court, the plaintiff sought, by competent evidence, to show that he, as a defendant in the foreclosure suit, had a substantial and meritorious defense to the plaintiff's cause of action as pleaded in its petition and had a superior lien on the land involved, and was entitled to a decree establishing his precedent claim and interest therein, but to such offer the defendant company interposed the general objection that such proffered testimony was irrelevant, incompetent and immaterial under the issues raised.

The court thereupon ruled as follows:

"I am going to limit the plaintiff's testimony to the transactions that took place between the Byron Reed Company and the parties after the commencement of the foreclosure suit. I am sitting here now to know, whether or

not I am to set aside the decree of foreclosure that was rendered in that case. If that is set aside, then the defendant in that action will be permitted to file his answer and make his defense to the foreclosure suit and to these mortgages. I will not go into that question of defense in this action, so I will confine you in your proof to what took place from and after the commencement of the foreclosure suit."

Counsel say in their brief in this court after quoting the foregoing ruling:

"So that this case, the one now before the court, started out upon the proper theory, that is, that the question to be determined was whether or not the decree in the foreclosure suit was fraudulently obtained. If it was, then the court would set it aside. If it was set aside, then whatever defense might be made to the foreclosure could be made in that action."

Having been successful in preventing the plaintiff from establishing the fact, that he had a meritorious defense in the foreclosure suit, and having secured the trial court to adopt the theory, that the only question to be tried was, whether in equity and good conscience the plaintiff ought to have a new trial because of the acts complained of, and that issue being the only one tried, we feel at liberty to adopt the same theory in disposing of this appeal, without at all committing ourselves to the rule that a party who seeks to be relieved against a judgment or decree need not plead and prove a good defense thereto, and therefore, for the purpose of this case, we will assume that the plaintiff has a valid defense and a good cause of action for affirmative relief which gives him precedence over the defendant, who claims a lien by virtue of the mortgage pleaded in its petition in the foreclosure suit.

The character of the suit, the nature of the relief prayed for and the facts upon which these are based appeal with peculiar force to the conscience of a court of equity. The plaintiff is an aged German of more than seventy years, illiterate, who speaks and understands the English lan-

guage most imperfectly.  He requires the assistance of an interpreter when conversing with those speaking the English language, when giving his testimony in court or when engaged in any transaction where that language is used and when the comprehension thereof is essential to intelligent action thereon.  He apparently has no very clear conception of the ordinary business transactions, other than those of the most simple kind, or of the methods by which controversies of a legal character are conducted and litigated in the courts.  He and his wife were occupying the real estate over which the controversy arises, as a homestead, the legal title being in her name.  At her demise, the land was devised to a son (August Klabunde) with the following provisions incorporated in the will for the support and maintenance of her surviving husband and under which he claims whatever equitable interest and right he may have in and to the real estate over which the parties are litigating.  After the words of devise to the son it is provided:

"With the following condition that my son August Klabunde shall give to Ernest Klabunde, my husband, a good home with board and $150 per year, during the natural term of Ernest Klabunde's life; and this shall be a mortgage upon above described premises, nor shall my son August Klabunde have a right to sell the within described real estate without the consent of my husband, Ernest Klabunde."

The mortgage under which the defendant claims was executed subsequently to the probating and allowance of the testamentary instrument from which we have just quoted. The evidence preserved by bill of exceptions is quite voluminous, covering some 335 typewritten pages.  We can not here reproduce it or such parts thereof as would give an intelligent understanding of the tendency of the whole, without extending this opinion to an unwarrantable length, and must content ourselves by stating the inferences we deem properly drawn therefrom and our conclusions of fact, from a careful consideration of the whole.  The son

and the father were not able, it appears from the record, to live peaceably together and the plaintiff had sought a home elsewhere.  The defendant, the Byron Reed Company, began foreclosure proceedings on its mortgage, making August Klabunde, his wife, Ernest Klabunde, the plaintiff herein, and others, defendants.  After the institution of the foreclosure suit, the plaintiff, in company with a person acting as interpreter, went to the office of the defendant company, for the purpose of securing information regarding the suit, its nature and purpose; and it is testified to by him and insisted by his present counsel, that by the action, promises, and agreement of the defendant company and its attorney, he was misled to his detriment and prejudiced and failed, because thereof, to make his defense in said action and establish his interest in the land under the provisions of the will as a first charge and lien thereon. It is the contention of the plaintiff that the defendant, through its officers and agents, promised that he should have  from the proceeds of a sale of the land $2,800 to pay for his support and maintenance, which he could draw annually in stated amounts from the court where the suit was pending; and that he would thereby and by such arrangement, receive what he was entitled to under the will. It is also testified and urged upon us as a warrantable inference from the evidence, that he was given to understand that the interests of the Byron Reed Company and himself were identical, and that it would be advisable for them to cooperate together, proceed with the suit and sell the land in order to deprive the son, August Klabunde, who had refused to provide for the father according to the terms of the will, of whatever interest he might have in the land and thus dispossess him and realize from a sale of the land a sufficient sum to meet the demands of both; that from that time forward Ernest Klabunde, in pursuance of such an agreement and understanding, acquiesced in and submitted to such further proceedings as resulted in a trial and the establishment by decree of court of the mortgage lien of the defendant and another prior thereto, as being superior

to the defendant's trust estate under the will, and the sale
of the land in pursuance of a decree of court for but little
more than enough to satisfy such prior liens, leaving to the
plaintiff but a very small sum, scarcely enough to pay his
attorneys, for the satisfaction of his claim under the will.
The defendant vigorously challenges the truth of the nar-
rative as related by the plaintiff and it is but just to say,
that the version of the defendant, of the several transac-
tions had, is more nearly the correct one; nevertheless, as
will be seen by a further discussion, we think the plaintiff
without fault on his part was led into a grievous error and
suffered the loss of substantial rights from which equity
ought to relieve him.  It is true, and it is admitted on all
hands, that after the foreclosure suit was instituted, the
plaintiff with an interpreter, as has been stated, visited
the office of the defendant company and there conversed
with those in its employ about the suit and the proper
course for him to pursue in relation thereto; that the attor-
ney for the defendant company was called in for his advice
and counsel, and that at the request of the company or its
attorney, the plaintiff went to the office of the attorney,
where an answer was drawn, in which the mortgages
pleaded in the petition of the defendant company in the
foreclosure action were admitted to be first and prior liens,
and, upon proper averments it was asked that the plain-
tiff's equitable interest, by virtue of the will, be fixed and
established by the court as a junior lien on the mortgaged
premises.  The answer thus prepared and the conference
leading up to it, we doubt not, are the action and conversa-
tion referred to by the plaintiff, as an agreement to pay
him $2,800 and the making of a contract to that effect
which he had signed; nor have we any doubt, from the rep-
resentations made to the plaintiff and from his under-
standing thereof, he believed that his lien would be estab-
lished by decree of court, that he would get the full amount
which it was admitted or agreed he should have under the
terms of the will, and that it would be paid to him an-
nually at the court house.  This was the agreement made

with the defendant as understood and testified to by the plaintiff. Having regard to plaintiff's expectancy of life and estimating his board to be worth $100 per year in cash, the present value of the charge upon the real estate, including the $150 cash annual payments, was, as found by the court, the sum of $2,800. While the defendant and its attorney were arranging with him to obtain a decree of court awarding him $2,800 to be paid out of the proceeds of the land and by the clerk of the court, provided such amount could be realized over and above the prior mortgage liens, the plaintiff himself understood and believed that such an amount would be paid him absolutely and without the contingency of the land being of sufficient value to satisfy, first, the mortgage liens aggregating more than $3,000. This difference as to the order of payment, we conceive to be, in a large measure, the explanation of the seeming contradiction in the testimony introduced in the case. It is shown, quite conclusively, that the plaintiff was relying upon the statement that he would receive money from the court house and that he was inquiring about it, was expecting it and was disappointed in its not being forthcoming. In this connection we quote briefly an excerpt from the testimony of defendant's attorney as to what transpired when he drafted the answer of the plaintiff in the foreclosure suit. He says:

A. I explained to him just how that he could realize on the will.

Q. And you told him that money would be paid into court and he could get some there each year until it was all gone?

A. I can repeat again what I told him.

Q. I am asking you.

A. I told him that at the time of the trial, now, it would be determined how much was due him from August by reason of the provision of the will wherein he was to give him, Ernest, $150 every year and provide him a home, which we considered worth $100 a year—that would be $250 a year. Now then it would be determined by the

court what that amount would be, at the time of the trial, and then, that the property would be sold and he would have a lien on it for that amount, and if the land sold for anything, why he would get that money—whatever the court found for him—and that if it sold for any more than enough to pay that—pay up all and pay that off——

Q. What?

A. The amount that would be found by the decree in his favor by reason of the construction of the will—his lien on the land. If there was any surplus money above that, that it would lay over there in the court, by the terms of the decree that he could go in there every year and get $250.

Q. That was on June 29, 1896?

A. That was what I explained to him when I drew up the answer.

The plaintiff was laboring under the impression that his interests and the interests of the Byron Reed Company were harmonious, when in fact they were antagonistic. He relied upon the advice of the company's attorney and employed him to represent him in the case under that belief. Although it is testified that his answer was explained to him before he signed it, in which the mortgages were admitted to be prior, it is manifest that he did not understand the legal effect of such admission nor that the admissions as made jeoparded his rights under the provisions of the will. The attorney, acting apparently upon the conviction that there was no real conflict of interests between plaintiff and defendant, undertook to represent both parties and pursued the course herein indicated. It is true that later on, other counsel was employed by the plaintiff, who could speak the German language, but this employment, it appears, was only for the purpose of contesting a third mortgage executed by the son, August Klabunde, and his wife, on the real estate devised by the will and no effort was made to raise any issue as to priority of right between the defendant company and the plaintiff. The plaintiff, we are satisfied, through the entire litigation and until after

a sale of the premises, acted under the belief, formed at the beginning of the litigation from the transactions referred to, and with the expectation that as between him and the defendant company, his interests in the premises would be protected and that he would receive all he claimed to be due him under the provision of the will. At the suggestion if not solicitation of the defendant's agents, he counseled with its attorney and acted on his advice. There is evidence positive in the record that the company sought to yoke its interest in the litigation with that of the plaintiff, and that both of them should make common cause against the son who, it is evident, was not executing the trust imposed on him by the terms of the will, of which he was the principal beneficiary.

It is obvious that the plaintiff had no clear conception of the clashing of interest as between him and the defendant; that he regarded himself as an ally and not as an antagonist, and that this *status* was the result of the conversation and conduct and encouragement of the defendant's agents and was maintained until the end of the suit.

Assuming, as we do for the purpose of this case, that the plaintiff had a superior equity in the land, devised by the will, which was covered by the subsequent mortgages, he is not, in our judgment, guilty of such neglect as would be inexcusable because his demand for relief was not properly presented for adjudication at the former trial. It seems to us quite clear that he was led astray by the negotiations first had between himself and the agents of the defendant company, at the time he sought information regarding the case and when his first answer was prepared and filed, and that the wrong course then adopted, for which, we are of the opinion, he is to be excused, under the circumstances disclosed by the record, attended his after movements and conduct throughout the entire course of the litigation. While what was said and done was not in its nature a compromise of differences, it partakes somewhat of the character of a compromise. The plaintiff was led to believe, it may be without intentional wrong by the

defendant or its attorney, that both he and the company were working to attain a common object, that their interests were mutual; that it was advisable for them to thus work together to dispossess the son, who was in opposition to both of them in their endeavor to have their respective rights in the land adjudicated, and that his interests under the will would be amply and fully protected without loss or reduction of the amount believed to be due him. He was thus misled greatly to his injury and when, too late for rectification in that litigation, he discovered that, while having a decree for the payment out of the land of all that which his deceased wife had provided for his support in his declining years, such decree was but a shadow and without substance, because the land itself had been wrested away from him under other claims adjudged to be prior in time and right to the one accruing in his favor under the terms of the will.

We do not say there has been any action on the part of defendant or for which it should be held responsible, which worked an actual fraud on the plaintiff's rights. It is not necessary that we should, nor do we think we would be warranted in so saying. There is, however, sufficient in the record to warrant the inference that he has suffered a wrong which equity will relieve against. There is at least constructive fraud. The plaintiff was lulled into a feeling of ease and safety, because of what he understood and what he was justified in believing was the promise and agreement of the defendant and because of the information received from its counsel, who undertook to represent him also in the litigation. Their interests were in fact conflicting and antagonistic, but from the explanation made to him, he believed them to be mutual and harmonious, and trusted both the defendant and its attorney for the safeguarding of his rights. He did not comprehend that the trust that he sought to impress on the real estate was endangered by the claims of the defendant company. He was satisfied from what had been told him that he would suffer nothing by having his case conducted by the same

attorney having in charge the defendant's litigation. Therefore he inquired no further. But if his theory in the present case is correct, then a most substantial and valuable right to him, at his age in life, was lost because an issue was not made as to the superiority of his rights over those of the defendant, and for not raising this issue, under the facts and circumstances in this case, we feel quite confident he is excusable and equity may properly intervene and grant relief against a decree thus obtained—a decree cutting off all his rights in the land, until and unless the amounts due on the two mortgages, hereinbefore mentioned, were first satisfied. The following authorities, bearing more or less directly on the question we have been discussing, illustrate the rule as to when equity will relieve against judgments obtained by fraud, actual or constructive, and on the ground of excusable neglect, and which, in the main, support the conclusion we have reached in the case at bar: *Nord v. Marty,* 56 Ind. 531; *United States v. Throckmorton,* 98 U. S. 61; *Payton v. McQuown,* 97 Ky. 757, 53 Am. St. Rep. 437, and notes to the same; *Arrington v. Arrington,* 116 N. Car. 170; Pomeroy, Equity Jurisprudence, page 1393, note 1 to section 960; 2 Freeman, Judgments, sec. 492.

While we have assumed, for the purposes of this case, that the plaintiff's equities in the land involved in the litigation were superior to those of the defendant company, it is of course not determined in this action that such is the case, either in law or in fact. The rights of the respective parties in this respect can be determined in the further litigation of the cause. All that is adjudged here is, that the plaintiff should be given an opportunity in the foreclosure suit to present his defense and set forth his alleged rights, by virtue of the provisions of the will, as being prior and superior to those of the defendant company, under its mortgages, and have the matter properly litigated and determined upon such issue

The former judgment of affirmance is vacated. The decree of the district court, dismissing the plaintiff's bill,

is reversed, and the decree entered in the foreclosure suit is vacated and set aside as prayed for in the plaintiff's. petition, a new hearing allowed, and this cause is remanded for further proceedngs.

REVERSED.