STATE OF NEBRASKA, APPELLANT, V. OMAHA COUNTRY CLUB
ET AL., APPELLEES.

FILED JANUARY 5, 1907.   No. 14,611.

1. Judgment: VACATING: FRAUD.  Under the provisions of section 602
   of the code, the courts will relieve against a decree on the ground
   of fraud committed by the successful party.

2. Taxation.   Courts will not aid in the depletion of the public
   revenues by permitting private property to escape taxation, except
   in obedience to positive law.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE.   *Reversed with directions.*

*Norris Brown, Attorney General, W. T. Thompson, W.
W. Slabaugh* and *A. H. Murdock,* for appellant.

*Edgar M. Morsman, Jr.,* and *W. J. Connell, contra.*

JACKSON, C.

The facts are involved, and an extended statement is
necessary to a correct understanding of the issue.

In 1896 Connell, being the owner of a fifty-two acre
tract of land in Douglas county, obtained a decree in an
original action in the district court reducing the valuation
for the purpose of assessment from $5,200 to $5,000.   The
decree provided: "That the county treasurer shall correct
upon the books of his office the assessed valuation of the
real estate set forth in said decree for the years 1892, 1893
and 1894, so as to correspond with the valuation herein
specified, and that the taxes so carried forward upon each
and all of said tracts and pieces of land shall stand as a
legal, valid, and duly authorized and subsisting lien there-
on; and that the county treasurer is required to accept
and receive in satisfaction and payment of each of said
liens the amount thereof, respectively, with lawful inter-
est on such liens."   It was further found in the decree that

the taxes levied for the years stated, except as therein
authorized, were excessive and void. No action was taken
by the county treasurer, and the taxes are still unpaid.
In July, 1904, the tract was included in a scavenger suit
instituted on behalf of the state for the collection of de-
linquent taxes. In the meantime Connell had deeded the
tract to the Omaha Country Club. In this action the
Omaha Country Club and Connell joined issues, claiming,
in effect, that the taxes for the years 1892, 1893 and 1894
were void, and had been declared void by the proceedings
of 1896.     On November 29, 1904, notice was served on
the county attorney that the defendants would ask a hear-
ing on December 3, 1904, or as soon thereafter as they
could be heard. It appears from the record that on De-
cember 3 the court postponed the hearing, on request of
counsel, to December 17, and that on the latter date, the
court being engaged in the hearing of another case, it was
ordered that the hearing be postponed until Saturday,
December 24. On December 24 the defendants appeared
and demanded an immediate hearing, the court being in
session, Honorable A. C. Troup, presiding. The state was
not represented, and proceedings were had which resulted
in a decree finding for the defendants that the taxes had
been declared void; that they were void, and that, not-
withstanding a reasonable time had intervened so to do,
the taxes had not been canceled, and it was ordered that
the treasurer of Douglas county cancel upon the tax
record of his office the several items of taxes so found to
be void. The decree was filed on January 6, 1905, after the
expiration of the term of office of the county attorney who
had instituted the scavenger suit. On March 27, 1905, the
present county attorney instituted this proceeding, by
petition under the provisions of section 602 of the code,
to set aside and annul the decree of December 24, 1904,
the term at which said decree was rendered having ad-
journed without day on January 24, 1905, it being charged,
in substance, that the decree was obtained by fraud. Upon
this petition issues were joined, and the trial resulted in

an order denying the prayer of the petition. The state appeals.

At the hearing upon the petition to set aside the decree, Judge Troup was called as a witness on behalf of the state, and testified as follows: "A. As I recall the facts now, it was in the month of December, 1904, probably the latter part of the month. Mr. Connell came into my court, and while I was on the bench, and said that there was and had been a matter involved in the so-called scavenger suit, involving certain taxes upon his property, which the decree at that time, or in a general way, and, as I understand, was this country club property, which ought not to be in that scavenger decree which had been rendered some time before that; and that it had evidently got in there by mistake or oversight or error of some kind. Afterwards there was a decree of this court to enter same before he considered all of that tax void, and, as I recall, canceled or disposed of; and that it was error to have it in this scavenger suit; that he had served a notice upon the county attorney to take this matter up and have a decree entered which would exclude this other, or scavenger decree. Q. What county attorney was it, Mr. English? A. Yes, sir, I think it was. At that time Mr. Connell said that he had had negotiations with Mr. Magney, one of the deputies, in respect to it; and I think that he said that he had been there several times to have it taken up, but that the county attorney or his deputy at one time or another had postponed it until that date, when he wanted it taken up. And I asked him if he had a decree, as I understood, all prepared, and I asked him if it was O.K.'d. Q. By whom? A. By the county attorney or some one in that office. And I think I took the decree at that time to see if there was an O.K. to it, and he said that that was not O.K.'d, and the county attorney didn't care to O.K. the decree. And I then said I thought attorneys ought to O.K. a decree to which they had no objections, or if they had objections they should be willing to appear before the court to satisfy the court that he was correct.

I thought it should be signed and entered by the court, and to that Mr. Connell, I think, said that—I do not know but that he consented to that, that they ought to do so, but that he didn't want to O.K. the decree for some reason, and he said, as I recall, that the taxes—it was the decree to which there could not be any valid or rightful objection, and I think he either—I think he offered to be sworn to give testimony. He had a decree in his hand purporting to be the decree that this court had previously entered for said taxes, and I think offered to hand it to me, and I may have taken it, but I don't recall taking it, at least I did not examine it, or indicate to any one as to its contents. Q. Did Mr. Connell state what its contents were? A. I do not know that he stated all the contents, only upon the statement that he believed that tax void, and disposed of the question, as I recall it. Q. Did Mr. Connell at this time state, in substance, that the county attorney had no objections to the court signing this decree? A. I could not say that he said they had no objections. I do not know about that, he may, and I do not know that this statement is it, but he may have said that there could not be any valid objections. I do not know that he said the attorneys didn't care to appear. Q. Or that the county attorney didn't desire to appear in the case? A. I think that he said they didn't desire to O.K. it, and I do not remember whether he had, and that he didn't desire to appear in court. I do not remember. Q. State upon what you based your decree in that case? A. It was upon the whole of the statements and circumstances of Mr. Connell's presentation of the case that I based that decree. If he was sworn it would include what he said upon oath, rather than upon any examination of any decree myself. I did not examine any decree."

James P. English, who was county attorney at the time the scavenger suit was instituted, testified, in substance, that he did not know the case had been reached in court, and that he had no knowledge that the decree had been entered until after his term of office expired; that he had

not consented to having decree entered on behalf of the defendants; that, in fact, the question of a decree had never been discussed between himself and the defendants, that the only discussion of the merits of the case that had ever occurred involved the question of whether the taxes found to be legal by the decree of 1896 should bear interest from the date they became delinquent at the rate of 10 per cent., or whether at the rate of 7 per cent., or whether, as claimed by Connell, they should not bear interest at all, the county treasurer having failed to comply with the provisions of the decree.   He also testified that he had never stated that he did not desire to resist the claim made by the defendants in their answer.   On cross-examination he was asked by Mr. Connell: "Q. Further in that connection, Mr. English, isn't it true that you did say to me, 'Well, I don't care to appear, you can make your showing,' or words, in substance, to that effect?   A. I can say positively that I did not."

Connell testified on his own behalf, his evidence being somewhat at variance with that of Mr. English.   He stated that a day or two before December 24, 1904, he met Mr. English on the sidewalk past the court house at the foot of the stone steps, and told him that the case would come up on Saturday, being the time fixed by the second postponement, and he wanted to have the hearing and would insist upon it at that time; that English said, all right, I could make my showing to the court, that he didn't care to appear.   Concerning his statement to Judge Troup he said: "I called Judge Troup's attention to the fact while he was on the bench a short time after the hour specified in the notice, stating, in substance, that this was the third time the matter had been brought before him; that I had given the other side written notice of the hearing; and that it had been delayed and postponed at the request of the county attorney, and that I now desired a hearing; and that I offered myself as a witness, and was sworn and took the witness stand.   I stated the facts as I understood them, both in regard to the original hearing and decree

rendered by Judge Powell (1896). I stated to him on
oath that I had made demand on the county treasurer soon
after the entry of the decree to comply with its terms;
had produced and shown to the county treasurer a true
copy of the decree, but that no action had been taken by
the county treasurer, and it was my contention and best
judgment that the taxes were absolutely void, not only
by reason of being declared void by the court in the decree
mentioned, but also and by reason of an invalid and irreg-
ular assessment, to which I made reference. I had a copy
of the decree among the papers in my hand, and when re-
ferring to the decree I passed it toward the judge and laid
it on his desk. My recollection is that Judge Troup took
it up and glanced at it, but did not read it through, with-
out giving it a careful reading, but evidently accepting
my sworn statement as to the nature and effect of it.
Judge Troup thereupon allowed the decree declaring the
taxes void."

From a consideration of all the evidence, it seems to be
the fair inference that the decree, which it is sought to
annul by this proceeding, was entered under a misappre-
hension of the facts. It is clear, both from the evidence
of Judge Troup and that of Mr. Connell himself, that the
court understood that the state did not care to resist the
entry of the decree, that the taxes had already been de-
clared illegal, and that, while the county attorney did
not care to O.K. the decree, he was satisfied to have the
defendants make their showing and take a decree cancel-
ing the taxes. The testimony of Mr. English seems to be
the most reasonable. It is hardly conceivable that a public
officer, charged with the performance of a duty so import-
ant to the state and to his constituents, would consent to
the cancelation of the taxes involved, which, it should be
stated, are the state, county and school district taxes. As
affecting the merits of the controversy involved in the
scavenger suit, and the defense of the state to the claim of
the defendants arising out of the decree of 1896, it is ap-
parent from the face of the decree that the most that may

be claimed for it, if anything, is that only such portion of the taxes as are levied on the valuation in excess of $5,000 are unenforceable by reason of the decree, and no facts are pleaded from which it could be inferred that any part of the taxes are void for any other reason. Courts should not permit the dissipation of public revenues by permitting private property to escape taxation, except in obedience to positive laws. The burdens of taxation rest lightly upon none. They are oppressive enough when all property bears its just proportion of the expenses of the government.

We are convinced that the decree was obtained under such circumstances as to amount to fraud, under the rule announced in *Klabunde v. Byron Reed Co.,* 69 Neb. 126, and followed in *Arnout v. Chadwick,* 74 Neb. 620, and it is recommended that the judgment of the district court be reversed and the cause remanded, with instructions to vacate the decree of December 24, 1904, according to the prayer of the petition.

ALBERT, C., concurs.

DUFFIE, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with instructions to vacate the decree of December 24, 1904, according to the prayer of the petition.

REVERSED.