AK-SAR-BEN EXPOSITION COMPANY, APPELLEE, V. C. A. SORENSEN, ATTORNEY GENERAL, ET AL., APPELLANTS.

FILED FEBRUARY 7, 1930. No. 27172.

*Irvin A. Stalmaster*, for appellants.

*Mullen & Morrissey, Herman Aye* and *Gaines, McGilton, Van Orsdel & Gaines*, contra.

Heard before ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and LANDIS, District Judge.

ROSE, J.

This is a suit in equity for an injunction. Plaintiff is the Ak-Sar-Ben Exposition Company, a Nebraska corporation organized to promote agriculture, to improve the breeding of live stock, to develop dairying, and to conduct expositions, stock shows, fairs and other forms of public entertainment, including horse races. Plaintiff maintains exposition grounds and buildings and a race track in Douglas county, at Omaha. Defendants are C. A. Sorensen, attorney general of Nebraska, whose residence and public office are in Lincoln, Lancaster county, and Henry J. Beal,

county attorney of Douglas county, whose residence and public office are in Omaha, Douglas county.

The petition describes the Ak-Sar-Ben Exposition Company, its incorporation, its purposes, its powers, its property, its obligations, its sources of income and its means of serving and entertaining the public without profit to itself, and contains other allegations to the following effect: Plaintiff is conducting horse races at its track in Douglas county. The present race meeting opened May 31, 1929, and plaintiff planned to continue it on week days up to and including July 4, 1929. To procure horses therefor plaintiff obligated itself for purses aggregating $165,000 and requiring daily disbursements of approximately $5,500. In raising and disbursing funds for purses and in conducting the races plaintiff alleges that it conforms to chapter 159, Laws of 1921, a Nebraska statute authorizing horse races, creating the state racing commission and providing, among other things:

"Any association or corporation, person or persons, or the owners of the horses engaged in such races, or others may contribute to purses or funds that shall be distributed on the basis of the result of the races, or prizes or stakes that are to be contested for, subject to the rules and regulations as fixed by the commission governing such contests. The intent and purpose of this act is that all horse racing held in the state shall be subject to the rules, regulations and control of said racing commission." Laws 1921, ch. 159, sec. 3; Comp. St. 1922, sec. 194.

In addition to the foregoing allegations, as outlined from the petition, plaintiff states in substance: Its sources of revenue are gate receipts, concessions and contributions to the purses and funds that are to be "distributed on the basis of the result of the races," the latter being the principal source of revenue. Contributions are made and disbursed pursuant to law under the rules, regulations and control of the state racing commission. Allegations summarized are followed by a paragraph of which the following is a copy:

"That the defendant, C. A. Sorensen, is the duly elected, qualified, and acting attorney general of the state of Nebraska; that the defendant, Henry J. Beal, is the duly elected, qualified and acting county attorney of Douglas county, Nebraska; that, notwithstanding the provisions of the laws of the state of Nebraska, and in particular the provisions of chapter 159 of the Laws of Nebraska for 1921, and the facts heretofore alleged in this petition, the defendants are severally threatening and intending to proceed against the plaintiff, its officers, servants and agents, and by criminal prosecutions, by injunctions and other legal proceedings, to interfere with, impede, and prevent the plaintiff from carrying on its business and, in particular, to prevent the plaintiff from conducting its business in so far as relates to the raising of purses and the distribution of the proceeds of the contributions, made by patrons in the manner that it is now doing, and, in this way, to prevent the plaintiff from receiving revenue from those contributing to purses or funds that are to be distributed on the basis of the result of the races; that the defendants have notified the officers and agents of the plaintiff that, if they do not immediately stop the present method of raising purses and distributing the proceeds on the basis of the result of the races, criminal proceedings will be commenced against the officers and that injunctions and other legal proceedings will be commenced against the plaintiff and its officers; that this action on the part of defendants is based on the assumption that the Act of 1921 is unconstitutional and that the method adopted by the plaintiff, with reference to accepting contributions and distributing purses to those who win the races, is in violation of the provisions of the Constitution, in that, it is either a lottery, a gift enterprise or a game of chance. The plaintiff alleges that the method adopted by it is not a lottery, a gift enterprise, or a game of chance."

To prevent defendants from carrying out their alleged threats and from interfering with plaintiff's methods of raising and disbursing funds in connection with horse racing, relief by restraining order and by injunction was prayed.

Plaintiff's petition was filed in the district court for Douglas county June 6, 1929. On that date a summons commanding service on defendant C. A. Sorensen, attorney general, was directed to the sheriff of Lancaster county and another summons commanding service on defendant Henry J. Beal, county attorney, was directed to the sheriff of Douglas county. The same day, June 6, 1929, Honorable James M. Fitzgerald, one of the judges of the district court for Douglas county, allowed a restraining order conforming to the prayer of plaintiff's petition and fixing June 10, 1929, as the date for the hearing of an application for a temporary injunction. The summons for defendant Sorensen and the restraining order were served in Lancaster county June 6, 1929, and the summons for defendant Beal and the restraining order were served in Douglas county on that date. The answer day fixed by the summons issued to the sheriff of Lancaster county was July 8, 1929. July 9, 1929, the day next following the answer day, there being no pleading on behalf of either defendant on file, Judge Fitzgerald entered a default against both defendants, made findings in favor of plaintiff to the effect that the facts stated in the petition are true, and "that it is not a violation of the law of Nebraska to bet on the results of horse races," and granted a perpetual injunction conforming to the prayer of plaintiff's petition. At the same term of court, four days later, July 13, 1929, defendant Beal filed a motion to set aside the default and the perpetual injunction and to permit a defense to the suit. The motion was accompanied by a showing in favor of opening the judgment and by an answer stating a complete defense to the petition. The motion was overruled by Judge Fitzgerald. Defendant Beal appealed to the supreme court.

The appeal presents for review the order overruling the motion to set aside the default, to open the decree granting the perpetual injunction and to permit a defense. Did the trial judge abuse his discretion and err to the prejudice of defendants? The determination of the question requires consideration of the petition, the motion, the showing, the

answer tendered with the motion, the entire proceedings resulting in the entry of the decree in equity and the evidence adduced on both sides of the controversy arising from the default.

According to the motion the delay in pleading to the petition on or before the answer day was attributable to plaintiff's failure to comply with a mutual understanding among counsel to take up the cause by agreement. Plaintiff resisted this ground of the motion, insisting that there was no agreement to postpone the hearing on the merits of the case and that there was no consent for delay that did not apply alone to a hearing on the application for a temporary injunction at the time fixed therefor by the district court, which was June 10, 1929. Two of plaintiff's counsel testified in effect that there was no agreement or mutual understanding to postpone a hearing on the merits of the case. Accepting this testimony without question, the evidence nevertheless tends to prove the following facts: By telephone at different times before answer day counsel for plaintiff conversed with the attorney general about the case. Neither plaintiff nor defendants asked for a hearing on the application for a temporary injunction June 10, 1929—the date fixed by the preliminary restraining order. The effect of such inaction on that date was to postpone the hearing for a temporary injunction. The nature of the pleading to be filed by the attorney general was mentioned in one of the conversations by telephone. By this means one of the counsel for plaintiff learned that the attorney general was undecided whether to demur or to answer and remarked that plaintiff could meet a demurrer without delay, but that an answer might require evidence and further time. By telephone these matters were subjects of conversation between counsel for plaintiff and the attorney general and were thus discussed before the default was entered. In one of the conversations by telephone the attorney general was informed there might be a contingency in which plaintiff itself would desire a brief postponement. The conversations by telephone, therefore, were not confined to the application

for a temporary injunction but extended beyond to pleadings relating to the merits of the case. No preliminary injunction was granted. While there was nothing in the conduct of plaintiff or its counsel to indicate bad faith on their part or an intention to mislead defendants into a failure to plead on or before the answer day, there were reason and authority to excuse the delay, when all the circumstances are considered.

The petition for a permanent injunction indicated the attorney general was of the opinion that plaintiff was operating a criminal lottery in connection with horse racing. In that petition plaintiff did not specifically explain to the court its principal method of raising and disbursing funds for the horse races. In the petition, however, plaintiff did make it clear that the attorney general did not agree to the alleged legality of the Ak-Sar-Ben's principal method of raising and disbursing money to support the horse races. The evidence before Judge Fitzgerald on the application for a perpetual injunction by default showed that the attorney general asked plaintiff to abandon that method, and, in the event of its failure to do so, expressed a purpose to interfere by invoking the processes of the law. A defense to plaintiff's suit in equity would be in harmony with the avowed purpose of the attorney general to enforce the laws against lotteries and gambling, as the chief law officer of the state understood those laws. A premise on which the petition for a perpetual injunction was based was the intention or threat of the attorney general to put a stop to the Ak-Sar-Ben's principal method of raising and disbursing money to continue the horse races. Equity may recognize a valid excuse, therefore, for the failure of defendants to plead to the petition on or before the answer day. Counsel for defendants, with convincing reason, as the record is viewed by the appellate court, relied in good faith, though mistakenly, upon what he supposed was an understanding that the case would not be taken up in his absence without his knowledge. A salutary precept has been stated in this form:

"Equity may relieve a party from a judgment taken against him through his excusable neglect." 34 C. J. 464, sec. 730.

This is a rule of equity in Nebraska. *Klabunde v. Byron Reed Co.*, 69 Neb. 126; *Arnout v. Chadwick*, 74 Neb. 620; *State v. Omaha Country Club*, 78 Neb. 178; *Johnson v. Samuelson*, 82 Neb. 201. Under all the circumstances, as they are presented by the record, it seems clear that the attorney general was convinced the suit would not be taken up in his absence without his knowledge, though a specific agreement to that effect had not been closed.

Counsel for plaintiff argued on appeal that it is lawful in Nebraska to bet on horse races and reminded the reviewing court that it is a serious matter to interfere with legitimate methods of raising and disbursing money to meet lawful obligations created by contract. It may be added that it is another serious matter to grant a perpetual injunction to prevent the attorney general of the state from enforcing the laws against gambling and lotteries—laws affecting the morals and pecuniary interests of the public as well as of the plaintiff in equity. When both of those propositions are, in good faith, involved in the same equitable controversy, it is important for the chancellor to discover the real meaning of the law and also the particular facts that control the issues. In granting the perpetual injunction Judge Fitzgerald heard one side only.

In rendering a final decree on an application for a perpetual injunction in a momentous cause affecting both public and private interests, the conscience of a chancellor will generally be better prepared to respond wisely to the promptings of equity and justice after listening attentively to forensic expositions of the law and to deliberate discussions of proved or conceded facts from the standpoint of each side of the controversy.

In the present instance the door to a defense was erroneously closed against defendants. The conclusion is unanimous that they were entitled to an order setting aside the default and the perpetual injunction on the ground of ex-

cusable neglect. The failure to set aside the default and the resulting decree was a manifest abuse of discretion for which the judgment below must be reversed.

It was further insisted by defendants that the default and the perpetual injunction should have been set aside because the petition of plaintiff did not state facts sufficient to constitute a cause of action; because the summons served in Lancaster county was void, leaving the district court without jurisdiction over the attorney general; because defendant Beal was a nominal defendant who never made any of the threats pleaded in the petition; because Judge Fitzgerald, contrary to the rules of the district court, took the cause away from Judge Dineen, to whom it had been regularly assigned for trial. Discussion of these additional grounds is unnecessary for the reason that the default and the decree granting the perpetual injunction must be set aside on the ground already considered.

The default and the decree granting the perpetual injunction are reversed and the cause will be retained in the supreme court to await the final judgment in *State v. Ak-Sar-Ben Exposition Co.*, 118 Neb. 851; the two cases having been consolidated by a former order.

REVERSED.