STATE, EX REL. RICHARD C. HUNTER, ATTORNEY GENERAL,
APPELLEE, V. THE ARAHO ET AL., APPELLANTS.
289 N. W. 545

FILED JANUARY 5, 1940. No. 30541.

*O'Sullivan & Southard, McKenzie & Dugan* and *William
N. Jamieson,* for appellants.

*Walter R. Johnson, Attorney General,* and *Clarence S.
Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER and MESSMORE, JJ., and CHAPPELL, District Judge.

PAINE, J.

This is an appeal from an injunction entered in a suit
brought by the state of Nebraska on the relation of the
attorney general against many defendants, restraining and
enjoining them from conducting or operating illegal betting
or gambling on horse races in their places of business in
the city of Omaha.

The petition was filed February 24, 1938, and named as
defendants Nebraska News Service, Inc., and then followed
some ten pages of defendants, setting out the place of

business, its location, and certain individuals conducting each place of business. It was charged in said petition that each and all of the defendants were wilfully violating the statutory and constitutional provisions of the state of Nebraska prohibiting gambling, betting, or otherwise gaming for money or other valuable property, and were carrying on, maintaining, and operating unlawful horse race betting establishments and gambling rooms at some 76 designated places, all in Douglas county, Nebraska.

The petition further alleged that said gambling establishments were open to the public generally, and the public invited to enter and place bets on horse races being held daily throughout the United States and in other countries. In paragraph 5 of the petition there are 76 sections, describing in detail each one of said establishments, and the persons operating, maintaining, and conducting the same.

The prayer of the plaintiff is that the court shall issue a restraining order forthwith, upon which a hearing shall be had, at a time fixed by the court, for the purpose of making said restraining order effective as a temporary injunction, and that upon the final hearing said injunction be made perpetual, and for such other and further relief as might be deemed just and equitable.

Certain motions were filed by the defendants, which were overruled, and a temporary injunction was granted by the district judge. Thereafter demurrers were filed, and submitted without argument to the court, and were overruled, and ten days allowed to answer. The defendants deny each and every allegation, and charge that the temporary injunction was granted in violation of the First Amendment to the Constitution of the United States, and is also contrary to, and in violation of, section 1 of the Fourteenth Amendment to the Constitution of the United States, and to section 5, art. I of the Constitution of the United States, and to section 5, art. I of the Constitution of Nebraska, relating to freedom of speech, and further allege in said answer that ordinance No. 14469 of the city of Omaha was in full force and effect at all times mentioned

in the petition, providing for an occupation tax of $500 for the very type of business in which the appellants were engaged, which tax had been fully paid by the defendants.

In addition to said answer, the defendants filed a request for a jury trial, on the ground that the charge against each of the defendants is the commission of a crime, and that each of said defendants is entitled to have such accusation submitted to a jury for its determination. Various other answers were filed by some of the separate defendants, embodying practically the same allegations.

The cause came on for trial, whereupon the plaintiff and defendants joined in the offer of a written stipulation, exhibit No. 1, and asked that it be made part of the bill of exceptions. All of the evidence is, therefore, contained in such stipulation, of some 14 typewritten pages, duly signed by counsel for plaintiff and all defendants, and the county attorney of Douglas county. It first sets out that the Nebraska News Service, Inc., a Nebraska corporation, is a subsidiary of the Nationwide News Service, an Illinois corporation, which last-named corporation gathers news pertaining to the weather conditions, the condition of track, race track odds on various horses prior to each race, final result of races at all of the various race tracks throughout the United States, and transmits such information by telegraph to various subscribers; that the Nebraska News Service, Inc., receives such information in its office in the Woodmen of the World building in Omaha, and transmits the same through the facilities furnished by the Northwestern Bell Telephone Company to each of the establishments named as defendants herein, and collects a weekly charge from each of the stipulating defendants, and that such service is identical in each establishment, and is simultaneously received by each of them as per contracts therefor, and that the hearing of this cause as to said Nebraska News Service, Inc., is continued to a date to be hereafter agreed upon.

It was further stipulated that the action was instituted by the attorney general for and on behalf of the state of

Nebraska; that all other defendants except the Nebraska News Service, Inc., operated and maintained establishments, as designated in paragraph 5; that the public generally was invited to enter such establishments, by means of electric signs and other means, and to place bets of money with the defendants on horse races being held daily in various places outside the state of Nebraska and in the United States and in other countries; that race horse forms and scratch-sheets were provided, and blackboards, charts, and other paraphernalia were in such places of business, and that all information of every kind concerning the horses and races, and the results thereof, were given to the patrons.

It was further stipulated that the losses and winnings of the patrons of each establishment were wholly dependent upon the chance outcome of the horses participating in each race, and the selections made by the patrons, and the bets of money made pursuant to such selections.

Some of the defendants named herein, it was stipulated, maintained and operated the establishments described in connection with lunch stands, beer parlors, taverns, cocktail lounges, drugstores, grocery stores, and other types of business.

It was further agreed that a great many persons visited said establishments during the hours of each day when the horse races were conducted, many to place bets on the outcome of such races, and as a result large sums of money were wagered each day by patrons in said establishments, and that said establishments were generally patronized by both men and women; that in some bets were accepted as low as 25 cents, while others accepted no bets less than 50 cents; that in some of said establishments minors of high school age were allowed to enter and place bets and participate in betting upon horse races.

Paragraph 8 of said stipulation reads as follows: "That none of said establishments which are named as defendants in this action and who are participating in this stipulation were conducted in or located within any race track inclosure

at licensed race meetings here in the state of Nebraska."

It was further set out in said stipulation that on February 23, 1937, the city council of Omaha passed an ordinance, being No. 14469, levying an occupation tax of $500 a year for the business of maintaining and conducting the kind of establishments described in the petition, and that each of the places named in the petition herein had duly paid to the proper officer of the city of Omaha the said $500 occupation tax.

After certain defendants suffered their defaults to be taken, then trial was had upon the pleadings and the facts as set out in said stipulation, and decrees were duly entered by the court.

In the decrees it was ordered, adjudged, and decreed that each and all of the defendants, their agents, officers, servants, and employees, be perpetually enjoined from carrying on, or operating, or engaging, or participating in any way, in illegal betting or gambling on horse races by and through, or in connection with, their places of business, or in any other manner, and by any other means or method, and from suffering, or permitting, or allowing illegal betting or gambling on horse races in, or in connection with, their places of business in Douglas county, Nebraska.

The errors relied upon by the defendants for reversal of this case can be briefly stated as follows:

1. That the decree is not supported by sufficient evidence, and is contrary to the evidence.

2. That the decree is contrary to law, because the petition does not state a cause of action for equitable relief; because it does not charge the commission of acts within the cognizance of a court of equity, or which would confer jurisdiction on a court of equity to grant an injunction; because the constitutional amendment, and the legislative Act of 1935 legalizing pari-mutuel horse race betting within racing inclosures, declared a new public policy of the state of Nebraska, and in effect repealed all existing statutes with reference to horse race betting, and rendered such statutes ineffectual, and any decisions of the Nebraska

supreme court holding that such betting constituted a lottery are contrary to the now declared public policy of the state of Nebraska.

3. That the decree is contrary to law because the relief prayed for and the injunction granted is an attempt to vest in courts of equity criminal jurisdiction. The only inadequacy of the remedy at law alleged is that to prosecute for such crimes openly would involve a multiplicity of suits, and would be expensive and ineffectual. By this method of injunction, a court of equity violates the statutory right of every defendant to a trial by jury, guaranteed by section 6, art. I of the Constitution of Nebraska, to the effect that the right of trial by jury shall remain inviolate, and section 11, art. I of the Constitution of Nebraska, which guarantees that in all criminal prosecutions the accused shall have the right to public trial by an impartial jury.

4. That the decree is contrary to law because the courts have no authority to proceed by injunction to abate the alleged nuisance until the appellants severally have been tried and convicted of the crime of maintaining a public nuisance, as set out in section 28-1017, Comp. St. 1929.

5. That the decree is contrary to law because, under the home rule charter granted by the legislature to the city of Omaha, said city has a right to declare what are nuisances, and to regulate the same, and in the absence of an allegation that such city has neglected to exercise that function, and in view of the fact that the evidence affirmatively shows that the city, under this grant of power, had licensed the very business which the defendants were conducting, and which this action seeks to enjoin.

In reference to the first error alleged, this court is of the opinion that the stipulation of facts upon which the case was to be decided was sufficient to sustain a finding that defendants' places of business were public nuisances. This court has long been committed to the rule that gambling houses are public nuisances. "The evidence discloses that the rooms on the second or upper floor of the building occupied were used for gambling and open to the public

and resorted to for such purpose. One of the questions argued and presented for determination is, whether a house kept for gambling is a common or public nuisance. This must, in view of the authorities bearing upon it, be answered in the affirmative. See Roscoe, Criminal Evidence, 821; Garrett, Nuisances, 227; *Rex v. Rogier*, 1 B. & C. (Eng.) 272; Wood, Nuisances, 63; *Rex v. Dixon*, 10 Mod. (Eng.) 336; 8 Am. & Eng. Ency. of Law, 1073." *Hill v. Pierson*, 45 Neb. 503, 63 N. W. 835. See, also, 5 Pomeroy, Equity Jurisprudence (2d ed.) 4296, sec. 1893; 46 C. J. 707.

The second error relied upon for reversal by the defendants charges that the injunction was granted contrary to law, in that the people of this state, by amending the Constitution, had in effect repealed all former laws with reference to horse racing and betting thereon.

Section 24, art. III of the Constitution of the state of Nebraska, as set out in Comp. St. 1929, reads as follows: "The Legislature shall not authorize any games of chance, lottery, or gift enterprise under any pretense, or for any purpose whatever." Under this section of our Constitution, an original action was brought in this court to enjoin the Ak-Sar-Ben Exposition Company from conducting an unlawful betting scheme, and in the opinion announced in *State v. Ak-Sar-Ben Exposition Co.*, 118 Neb. 851, 226 N. W. 705, it was held that the pari-mutuel system of betting on race horses is a game of chance, a lottery, likewise gambling, and is unlawful under the Constitution of the state of Nebraska, and a temporary injunction was allowed, and such temporary injunction was made perpetual by this court in *State v. Ak-Sar-Ben Exposition Co.*, 121 Neb. 248, 236 N. W. 736. See, also, *Ak-Sar-Ben Exposition Co. v. Sorensen*, 119 Neb. 358, 229 N. W. 13.

At the general election held in November, 1934, an amendment to the above section of the Constitution was submitted to the voters of the state, and was carried, and thereafter section 24, art. III of our Constitution, as amended, has read as follows: "The Legislature shall not authorize any games of chance, lottery or gift enterprise; but nothing in this

section shall be construed to prohibit the enactment of laws providing for the licensing and regulation of wagering on the results of horse races by the pari-mutuel or certificate method, when conducted by licensees within the race track inclosure at licensed horse race meetings." Because of said amendment, the defendants in the case at bar insist that this amendment declared a new policy in our state with reference to betting on horse races, and had the effect of repealing any existing statutes with reference to horse race betting, and rendered former court decisions, holding that such betting constituted a game of chance and a lottery, of no effect as against the new declared policy of the state, as shown by the adoption of the amendment by the people of the state.

Acting on the authority given in said amendment, the legislature at its session of 1935 adopted laws governing the state racing commission and horse racing with pari-mutuel wagering, and the same is found set out in sections 2-1501 to 2-1519, as set out in Comp. St. Supp. 1935, and thereafter. The same legislature also amended sections 2-208, 28-942, 28-962, and 28-963, Comp. St. 1929, by adding thereto provisos that nothing therein should prohibit pari-mutuel wagering on horse races.

Section 2-1513, Comp. St. Supp. 1935, sets out that the purpose of the act was to encourage agriculture and horse breeding in the state of Nebraska, and that at each race meet there should, if possible, be at least one race on each racing day limited to horses foaled in Nebraska, and that 3 per cent. of the first money of every purse won by a horse bred in Nebraska should be paid to the breeder of such horse. This law clearly and specifically sets out the purpose of pari-mutuel racing in Nebraska, and nothing therein indicates that the bars are to be thrown down, as the defendants argue, to permit gambling in Nebraska upon horse races which may be held in every state in the Union and in foreign countries, as it must be evident that such widespread gambling upon horse races was not within the scope of the amendment, adopted by the majority of the

voters of Nebraska, to permit only pari-mutuel betting and gambling, or in the minds of the members of the legislature, who adopted section 2-1513, *supra,* but it only permitted a definite form, known as pari-mutuel horse race betting, and required that the same must be conducted under license duly issued by the state racing commission, and be conducted in strict accordance with the conditions and limitations as set out in said law, which requires that it be conducted by licensees within the race track inclosure at licensed horse race meetings.

In our opinion, nothing in the amendment to the Constitution of Nebraska, or in the laws passed to carry said change into effect, supports the contention of the defendants that the bars are now down on all forms of games of chance, betting, and gambling in connection with horse races of any kind, wherever held.

The third error relied upon by the defendants for reversal is that the injunction granted is an attempt to vest in courts of equity criminal jurisdiction, and that it also violates the right to a jury trial guaranteed by our Constitution.

The defendants in their brief cite 5 Pomeroy, Equity Jurisprudence (2d ed.) 4291, sec. 1890, wherein it is said: "A court of equity is in no sense a court of criminal jurisdiction. Its primary province is the protection of property rights. Hence, an injunction will not be granted to restrain an act merely criminal, where no property right is directly endangered thereby. Thus, an act morally wrong, such as gambling, will not be enjoined at the suit 'of an individual; nor will a violation of a Sunday law; nor a violation of a statute where no property rights are involved." However, in the same text, page 4296, section 1893, it is said: "As a public nuisance concerns the public generally, it is the duty of the government to take measures to abate or enjoin it. Hence, it follows that the government can obtain an injunction to restrain a public nuisance, without showing any property right in itself. The duty of protecting the property rights of all its citizens is sufficient to warrant issuing the

injunction. Therefore, wherever a public nuisance is shown, equity must enjoin it at the suit of the government. 'Every place where a public statute is openly, publicly, repeatedly, continuously, persistently and intentionally violated, is a public nuisance.' "

It has been held in many states that equity has jurisdiction in a suit by the state, and in the absence of statute, to abate a liquor nuisance, although the acts constituting the nuisance amount to a crime. A careful annotator cites the following cases: *Walker v. McNelly,* 121 Ga. 114, 48 S. E. 718; *Mugler v. State of Kansas,* 123 U. S. 623, 8 S. Ct. 273. Prize fighting may also be enjoined, although it constitutes a crime. *Columbian Athletic Club v. State,* 143 Ind. 98, 40 N. E. 914, 28 L. R. A. 727, 52 Am. St. Rep. 407; *State v. Fanning,* 97 Neb. 224, 149 N. W. 413.

In the case of *State v. Chicago, B. & Q. R. Co.,* 88 Neb. 669, 130 N. W. 295, this court held that a court of equity had jurisdiction to enjoin a railroad from serving intoxicating liquors on its dining cars, and in the text it seems to hold that the open, public, repeated, continuous, and persistent violation of law constituted a public nuisance which a court of equity could enjoin. See *State v. Omaha Motion Picture Exhibitors Ass'n,* 133 Neb. 89, 274 N. W. 397.

"If equitable grounds exist, as a general rule the fact that the nuisance against which equitable relief is sought constitutes a criminal act does not oust the jurisdiction of equity in the premises. The criminality of the act neither gives nor ousts the jurisdiction of the court of equity. The jurisdiction is exercised over the act as a nuisance as distinguished from the mere crime." 46 C. J. 762.

The equity court's jurisdiction to abate a nuisance is not affected by the fact that the creation or maintenance of the nuisance is a crime under the common law or by virtue of statutory enactment. 19 Am. Jur. 136, sec. 141.

In the case at bar, the defendants stressed at length that the granting of the injunction in this case deprived them of their constitutional right to a trial by jury, and to the right to be confronted by witnesses, and to be acquitted

unless proved guilty beyond a reasonable doubt, and deprived the defendants of the presumption of innocence, and also other safeguards provided in the trial of a person charged with the commission of a crime.

The facts as stipulated in the case at bar support the contentions that there is a wholesale, wilful, and continuous violation of the laws of the state of Nebraska, and that, even though the violation is but a misdemeanor, that fact will not oust the courts of equity of jurisdiction when the acts of the many defendants complained of clearly constitute a public nuisance under our law. *Hill v. Pierson,* 45 Neb. 503, 63 N. W. 835; *Kittle v. Fremont,* 1 Neb. 329.

The fourth error set out by the defendants is that courts have no authority to proceed by injunction until defendants have been tried and convicted of maintaining a public nuisance under section 28-1017, Comp. St. 1929.

The defendants call our attention to the fact that, before the amendment of the Constitution permitting pari-mutuel betting, such act was punishable as a crime, under sections 28-942 to 28-948, Comp. St. 1929, also under section 28-1017, *supra. State v. DeWolfe,* 67 Neb. 321, 93 N. W. 746.

"It is a general rule that, where acts complained of are in violation of the criminal law, courts of equity will not, on that ground alone, interfere by injunction to prevent their commission, as they will not exercise their power for the purpose of enforcing criminal laws, but there is a well-recognized exception to the general rule, namely, that where the acts complained of constitute a nuisance and endanger the public health and welfare, and where a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity may, at the instance of properly constituted authorities, afford relief by injunction." *State v. Heldt,* 115 Neb. 435, 213 N. W. 578.

The remedy in equity is purely preventive. The chancellor does not punish the defendant for what he has done; this is left to the criminal courts. *Respass v. Commonwealth,* 131 Ky. 807, 115 S. W. 1131, 21 L. R. A. n. s. 836; *Pompano Horse Club v. State,* 93 Fla. 415, 111 So. 801, 52

A. L. R. 51; *State v. Fox Beatrice Theatre Corporation*, 133 Neb. 392, 275 N. W. 605.

The fifth error relied upon by the defendants for a reversal is that the decree is contrary to law because the city of Omaha, under its home rule charter, had passed an ordinance recognizing the specific business conducted by the defendants, and licensing the same for a fee of $500.

Section 5, art. XI. of the Constitution of Nebraska, provides that any city having a population of more than 100,000 may adopt a home rule charter by a majority vote of its qualified electors. However, a municipal corporation has only such powers as are expressly conferred upon it, in matters of strictly municipal concern. But even in such cities state legislation is not excluded upon such subjects as pertain to state affairs. There being no strict test or guide for distinguishing municipal concerns from state affairs, the court passes upon each case as it arises. It held that education was a matter of state concern in *Carlberg v. Metcalfe*, 120 Neb. 481, 234 N. W. 87. See, also, 10 Neb. Law Bulletin, 474; *State v. Temple*, 99 Neb. 505, 156 N. W. 1063; *Eppley Hotels Co. v. City of Lincoln*, 133 Neb. 550, 276 N. W. 196; *State v. Halbert*, 115 Neb. 194, 212 N. W. 33; *Sandell v. City of Omaha*, 115 Neb. 861, 215 N. W. 135.

In section 4 of the Omaha ordinance No. 14469, it provides: "This ordinance is enacted solely as a revenue measure of the city of Omaha." So it is quite clear, by its own terms, that the purpose of the ordinance was not to regulate or control horse race gambling establishments, which the Constitution of our state expressly prohibits in section 24, art. III. It was, therefore, a question of state-wide interest.

The defendants in their brief also charge that the petition "prays for a personal injunction in perpetuity against individuals to enjoin each of them personally from committing a crime on the property described but not made a party defendant, *or elsewhere in Douglas county, Nebraska.*"

"The chancellor will not enjoin the mere commission of a crime; but, when property is used in such a way as to

become a nuisance, the continuance of this nuisance may be enjoined. There is a manifest distinction between enjoining an individual from committing a crime and enjoining the owner of property or its possessor from allowing his property to injure others. In the latter case the chancellor only regulates the use which may be made of the property, restraining the defendants from so using their property as to make it a nuisance to others. If the use of the property is such as to require that it should be restrained by injunction, the chancellor's jurisdiction is not affected by the fact that this use may be also a criminal offense. The remedy in equity is purely preventive. The chancellor does not punish the defendant for what he has done. This is left to the criminal courts. The only thing that he determines is that the defendants must not in future so use their property as to be a nuisance. The judgment does not convict them of any offense. It merely restrains them in future from so using their property as to make it a nuisance. The judgment deals merely with the use of the property in question. The chancellor may not enjoin the defendants from operating a poolroom anywhere; but he may enjoin them from so using the property referred to in the judgment as to make that property a public nuisance. The court of chancery will not restrain personal conduct, but it will restrain the unlawful use of property." *Respass v. Commonwealth,* 131 Ky. 807, 115 S. W. 1131.

We are rather inclined to the view that the decree as entered by the trial court was too broad. In our opinion, the decree should be modified to read as follows: It is therefore ordered, adjudged and decreed that the defendants, and all agents, officers, servants, and employees acting through and under them, be and they hereby are perpetually enjoined from in any way or manner carrying on or operating or maintaining such a public nuisance or public nuisances by engaging or participating in any way in illegal betting and gambling on horse races, or by suffering or permitting or allowing illegal betting or gambling on horse races to be carried on by, in, through, or in connection with

their place or places of business described in plaintiff's petition.

The decree as so modified is hereby affirmed.

AFFIRMED AS MODIFIED.