PORTAGE TOWNSHIP *v.* FULL SALVATION UNION.

1. TOWNSHIPS — ZONING ORDINANCE — RESIDENCE — CONSTRUCTION, SANITATION AND REQUIRED FACILITIES.

Erection of small buildings and tents for residential purposes on premises owned by an ecclesiastical corporation, which did not comply with township zoning ordinance with reference to construction, sanitation, and required facilities and permits, constituted a violation of such ordinance.

2. SAME—ZONING ORDINANCE—CAMP MEETINGS.

Holding a camp meeting by an ecclesiastical corporation *held,* an unauthorized use of premises under township zoning ordinance.

3. SAME—ZONING ORDINANCE—CAMP MEETING—CHURCHES. ·

The fact that a camp meeting was held for religious purposes did not place the use of the premises in the same category as churches, a use authorized under township zoning ordinance in such area, since the mere fact that religious services are conducted in a place does not constitute it a church.

4. RELIGIOUS SOCIETIES—CHURCHES.

A church is a building set apart for public worship, especially Christian worship.

5. SAME—CAMP MEETING.

The term ''camp meeting'' implies a religious gathering for the purpose of conducting a series of religious services, usually in the open air or in a tent, lasting for several days, during which persons attending ''camp'' in tents or temporary houses.

6. TOWNSHIPS—ZONING ORDINANCES—CAMP MEETING—AUTHORIZED USES.

Conducting camp meeting of an ecclesiastical corporation until approximately 4 a.m. with noise that disturbed others residing in the vicinity *held,* not a use authorized by township zoning ordinance permitting use of buildings for churches.

7. MUNICIPAL CORPORATIONS—ORDINANCES—VALIDITY PRESUMED.

A presumption prevails in favor of the reasonableness and validity in all particulars of a municipal ordinance unless the contrary is shown by competent evidence or appears on the face of the enactment.

8. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—ORDINANCES.

Every intendment is in favor of the constitutionality of the ordinance of a municipal corporation.

9. SAME—BURDEN OF SHOWING UNCONSTITUTIONALITY OF ORDINANCE.

One attacking the constitutionality of a municipal ordinance has the burden of showing that it has no real or substantial relation to public health, morals, safety or general welfare.

10. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—POLICE POWER.

Zoning ordinances are constitutional in principle as a valid exercise of the police power.

11. TOWNSHIPS—ZONING ORDINANCES—RESIDENCES—CONSTRUCTION, SANITATION AND REQUIRED FACILITIES.

Requirements of township zoning ordinance that each residence be provided with running water, sufficient windows to light and ventilate all portions of the rooms, forbidding automobile trailers, tents and outside toilets, except for limited purposes, substantial foundation of mortar and stone, brick, concrete or other like material raising joists at least one foot off the ground, served proper purposes well within the scope of the police power and enabling statute (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16; Act No. 302, Pub. Acts 1937, as amended by Act No. 69, Pub. Acts 1939).

12. EQUITY—INJUNCTION.

Equity has not the power to restrain violations of criminal statutes or ordinances unless the specific facts involved form a basis for equitable relief.

13. SAME—ADEQUACY OF REMEDY AT LAW—VIOLATION OF ORDINANCE—NUISANCES PER SE.

Where statute specifically declared that buildings erected or converted to uses in violation of township zoning ordinance were nuisances per se, a court of equity had jurisdiction to grant relief under the statute upon finding statute was violated and remedy at law for enforcement was inadequate (3 Comp. Laws 1929, § 13944; Act No. 302, Pub. Acts 1937, as amended by Act No. 69, Pub. Acts 1939).

14. SAME—ABATEMENT OF NUISANCES—JURISDICTION.

Equity has jurisdiction to abate existing nuisances especially such as affect the health, morals, or safety of the community.

15. SAME—PREVENTION OF BREACH OF PENAL ORDINANCE—NUI-
SANCES.

   Courts of equity will not interfere to prevent the breach of a
   penal ordinance, but may properly do so under certain circum-
   stances to prevent the continuance of a nuisance.

Appeal from Kalamazoo; Weimer (George V.),
J. Submitted June 4, 1947. (Docket No. 17, Cal-
endar No. 43,295.) Decided October 13, 1947. Ap-
peal to Supreme Court of the United States dis-
missed March 15, 1948.

Bill by Portage Township against Full Salvation
Union, a Michigan 'corporation, and another to re-
strain violation of zoning ordinance. Decree for
plaintiff. Defendants appeal. Affirmed.

*Clair S. Beebe,* for plaintiff.

*Homer Arnett,* for defendants.

CARR, C. J. Plaintiff in this case brought suit for
injunction on June 22, 1944, seeking to restrain the
use of certain premises in violation of the township
zoning ordinance. The defendant Full Salvation
Union, an ecclesiastical corporation formed under
the laws of the State of Michigan, is the owner of
the premises in question, and defendant Andrews
is in charge thereof as the agent of the corporate
defendant. Defendants, by answer to the bill of
complaint, raised issues involving the interpreta-
tion of the ordinance, its validity as construed by
the officers of the township, the right of the plaintiff
to seek equitable relief, and other matters not of
controlling importance. Following trial in circuit
court, a decree was entered for plaintiff in accord-
ance with the prayer of the bill of complaint, and
defendants have appealed.

The ordinance in question went into effect on
January 16, 1942. It was adopted pursuant to the

provisions of Act No. 302, Pub. Acts 1937, as amended by Act No. 69, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2651–11 *et seq.*, Stat. Ann. 1942 Cum. Supp. §§ 5.2962 [1]–5.2962 [12]). Said act was repealed by Act No. 184, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 2651–71 *et seq.*, Stat. Ann. 1946 Cum. Supp. §§ 5.2963 [1]–5.2963 [31]). By specific provision of section 26 of the repealing act, however, ordinances previously adopted by townships under the act of 1937 remained in full force and effect subject to the adoption of a new ordinance relating to the subject matter.

The general purpose of the act under which plaintiff's zoning ordinance was adopted was indicated by the title which read as follows:

"An act to provide for the establishment in certain organized townships of districts or zones lying wholly outside of the corporate limits of cities and villages, within which districts or zones the use of land, natural resources and structures, the height, the area, the size and location of buildings may be regulated by ordinance, and within which districts regulations may be established for the light, ventilation, sanitation and protection of such buildings, and within which districts the density of population may be regulated by ordinance; to provide for the administering of this act, and for a planning board; to provide penalties for violation; to provide against conflict with State housing code or other acts, ordinances or regulations; to provide for the collection of building permit fees in benefited districts and of taxes therefor; to provide for petition, public hearing and a referendum by the electors."

The ordinance in question divides the township into five so-called "use districts," designated as "A" residence district; "B" residence district; "C" local business district; "D" commercial and industrial district; "E" industrial district. The

premises involved in the instant case are located wholly in districts "A" and "B." The ordinance permits buildings in district "A" for private and two-family dwellings, churches, public schools, libraries, and accessory buildings incident to any one of the authorized uses. In district "B" the same uses are expressly authorized as for district "A" and in addition thereto farming and truck gardening, multiple dwellings, hotels, private clubs, fraternities and lodges, boarding houses, hospitals, educational, philanthropic and eleemosynary institutions, nurseries and greenhouses, buildings and uses accessory to those expressly enumerated when located on the same lot and not involving the conduct of a retail business, public garages for storage purposes only, and golf courses. The requirements imposed with reference to light, ventilation, sanitation and protection specify that every dwelling shall have windows so located as to properly light and ventilate all portions of the rooms. Outside toilets are forbidden except for temporary use during construction work on the premises, and each dwelling is required to be provided with "running water, adequate inside water-closet accommodations, and sewage facilities." The ordinance further directs that each dwelling shall be placed upon a substantial foundation of mortar and stone, brick, concrete or other like material, with joists not less than one foot off the ground. The use of tents, house trailers and automobile trailers for dwelling purposes is forbidden, subject to the provision that a trailer may be used for a total period of not more than 14 days in any one year by a single family, when such trailer is located upon premises having running water and sewage facilities.

The ordinance further makes provision for building permits, for fees therefor, and for enforcement

of its provisions by the supervisor of the township. A board of appeals is created to function in accordance with the provisions of the enabling act. A penalty by way of fine is provided for any violation of the ordinance, with authority in the court imposing the fine to require imprisonment in the county jail until the same is paid, not exceeding 30 days.

The defendant Full Salvation Union acquired title to a part of the premises in question in November, 1942, pursuant to a land contract executed in May preceding. The balance of the land was purchased in June, 1943. The tract owned by the defendant is approximately 16½ acres in extent. Following the execution of the land contract in May, 1942, the defendant corporation applied for and obtained a building permit for the construction of a tabernacle for religious purposes. A permit was also obtained for a caretaker's residence. These buildings were completed in the summer of 1942 and thereafter a camp meeting was held on the premises for a period of about two weeks. A number of small buildings were erected on the grounds, to be used as temporary dwellings by members of the Full Salvation Union during the meetings. Other small buildings were brought on the premises for the same purpose, and tents and house trailers were also used. During the camp meeting period the corporate defendant provided persons attending with meals. It is claimed that this service was rendered at cost and not for the purpose of making any financial profit. No building permits were obtained for any of the smaller residences. In the summer of 1943 a camp meeting was conducted on the premises for a somewhat longer period than that held during the preceding year. The buildings and tents in question were used for residential purposes and it

appears that such use was continued in one or more instances following the termination of the camp meeting. As above noted, the suit for injunctive relief was instituted in June, 1944.

The trial court, after listening to the proofs of the parties, concluded that the defendants had deliberately and persistently violated the township ordinance and had by their acts created a nuisance. Injunctive relief to prevent further violations and a continuation of the nuisance found to exist was granted and defendants were further ordered to remove within 30 days all structures erected in violation of the terms of the ordinance.

It is the claim of the defendants on appeal that the use made of the premises as established by the proofs was not in violation of the terms of the ordinance. Such contention, however, is not tenable. The small buildings, referred to in the record as shacks, constructed on the property or brought there for residential purposes, clearly did not comply with the requirements of the ordinance with reference to construction, sanitation, and required facilities. Such structures cannot be regarded as accessory to any other building lawfully erected on the premises. Obviously, their purpose was to facilitate the carrying on of the camp meeting. The same conclusion follows with reference to the tents which defendants permitted to be erected on the premises and which the record indicates members of the Full Salvation Union were invited to bring with them to the camp meeting. It is obvious, also, that the camp meeting itself was an unauthorized use of the premises on which it was conducted. In effect, defendants contend that because such meeting was held for religious purposes it should be placed in the same category as churches which, as above noted, the ordinance expressly authorizes.

However, the conclusion does not follow that every place in which religious services are conducted is a church. *Starks* v. *Presque Isle Circuit Judge,* 173 Mich. 464 (43 L. R. A. [N. S.] 1142, Ann. Cas. 1914 D, 773). Webster's New International Dictionary (2d Ed.), defines a church as "A building set apart for public worship, esp. Christian worship." The term was clearly used in the ordinance before us with such meaning in mind. The term "camp meeting" implies a religious gathering for the purpose of conducting a series of religious services, usually in the open air or in a tent, lasting for several days, during which persons attending live in tents or temporary houses. *Johnson* v. *Jones,* 86 Vt. 167 (83 Atl. 1085); *Commonwealth* v. *Bearse,* 132 Mass. 542 (42 Am. Rep. 450). The term necessarily implies that part or all of those attending the meeting shall "camp," in the ordinary meaning of that word. Defendants' meetings were conducted in this manner, many of those attending using the small buildings or shacks referred to, and tents, for residential purposes.

The record before us indicates rather clearly that the camp meetings conducted by defendants were attended with such degree of noise as to cause disturbance to others residing in the vicinity. There is testimony to the effect that such noise continued from early in the morning until approximately 4 a.m. the following day. It cannot be said that such use was within the contemplation of the ordinance.

This brings us to a consideration of the principal question in the case, the validity of the zoning ordinance. Defendants claim that as construed by the township officials and by the trial court it is not a proper exercise of the police power of the State because "unreasonable, arbitrary and discriminatory." Defendants further assert, as appears from

their answer, that said ordinance operates to deprive them of property without due process of law in violation of the Constitution of the United States (14th Am., § 1) and the Michigan Constitution (1908), art. 2, § 16. That the ordinance must stand the test of reasonableness is not disputed. However, the presumption is in favor of validity. Courts may not properly invalidate a statute or ordinance unless the constitutional objections urged against it are supported by competent evidence or appear on the face of the measure in question. In *Harrigan & Reid Co.* v. *Burton,* 224 Mich. 564 (33 A. L. R. 142), it was said (p. 569):

"The generally accepted rule is that a presumption prevails in favor of the reasonableness and validity in all particulars of a municipal ordinance unless the contrary is shown by competent evidence, or appears on the face of the enactment."

See, also, *City of East Lansing* v. *Smith,* 277 Mich. 495.

In *Austin* v. *Older,* 283 Mich. 667, the general rule was stated as follows (p. 674):

"It is elementary that every intendment is in favor of the constitutionality of an ordinance and plaintiff has the burden of showing that it has no real or substantial relation to public health, morals, safety or general welfare. Zoning ordinances are constitutional in principle as a valid exercise of the police power."

Of like import is *Moreland* v. *Armstrong,* 297 Mich. 32.

Defendants cite and rely on *Senefsky* v. *City of Huntington Woods,* 307 Mich. 728 (149 A. L. R. 1433). There the plaintiff instituted mandamus proceedings to compel the defendant city to issue a building permit which had been refused because the

contemplated residence contained less than the usable floor space specified by the city zoning ordinance. It was held by this Court that the requirement, as applied to plaintiff's property, was unreasonable under the particular facts involved because having no tendency to advance or protect the public health, morals, safety or general welfare. A somewhat similar situation was presented in *Frischkorn Construction Co.* v. *Redford Township Building Inspector,* 315 Mich. 556. The facts in the case at bar, however, serve to differentiate it from the cases cited. The provisions of plaintiff's zoning ordinance, involved in this case, cannot be said to be unrelated to the public health and welfare. The requirements as to water, light and sanitation, above noted, clearly were incorporated to serve proper purposes well within the scope of the police power. It cannot be said that they do not reasonably serve such purposes. Neither does it appear that the restrictions as to the use of premises located in districts "A" and "B" are not reasonably within the scope of the authority vested in the township under the act of the legislature. Applying the general principle suggested by the decisions above cited, we find that the provisions of the ordinance in question, to which defendants object, are valid.

Defendants further claim that equity is without jurisdiction to grant the relief sought by plaintiff because the ordinance contains no provision expressly authorizing, seeking, or issuing, an injunction against violations of the ordinance. Attention is directed to *Township of Warren* v. *Raymond,* 291 Mich. 426. There the plaintiff sought to enjoin the defendant from operating a junk yard without complying with the requirements of a township ordinance entitled:

"An ordinance to license and regulate junk dealers and junk yards and the collection and depositing of junk in the township of Warren."

Said ordinance contained no provision for its enforcement by injunction. This Court recognized the general rule that equity has not the power to restrain violations of criminal statutes or ordinances unless the specific facts involved form a basis for equitable relief. Attention was called to the fact that the wrecking of automobiles is not a public or private nuisance per se, and further that the pleadings did not allege a public nuisance calling for injunctive relief. A decree of the trial court granting the relief sought by plaintiff was accordingly reversed and the bill of complaint dismissed. In the case at bar, however, the statute pursuant to which plaintiff's ordinance was adopted specifically declared in section 8 thereof, that:

"Buildings erected, altered, razed or converted, or uses carried on in violation of any provision of township ordinances or regulations made under the authority of this act are hereby declared to be a nuisance per se. The court shall order such nuisance abated and the owner and/or agent in charge of such building or land shall be adjudged guilty of maintaining a nuisance per se."

It thus appears that under the specific terms of the statute the use made by defendants of the premises in question, and the buildings erected, in violation of the terms of the ordinance, constitute a nuisance per se. Such result was recognized by this Court in *People* v. *Kelly,* 295 Mich. 632. An analogous provision of the prohibitory liquor law of Kansas was before the Supreme Court of the United States in *Mugler* v. *Kansas,* 123 U. S. 623 (8 Sup. Ct. 273, 31 L. Ed. 205). In discussing the effect of such provision, which in terms declared all places

where intoxicating liquors were manufactured, sold, bartered or given away in violation of the provisions of the statute to be common nuisances, the court said (pp. 673, 674):

"The statute leaves the court at liberty to give effect to the principle that an injunction will not be granted to restrain a nuisance, except upon clear and satisfactory evidence that one exists. Here the fact to be ascertained was, not whether a place, kept and maintained for purposes forbidden by the statute, was, *per se,* a nuisance—that fact being conclusively determined by the statute itself—but whether the place in question was so kept and maintained.

"If the proof upon that point is not full or sufficient, the court can refuse an injunction, or postpone action until the State first obtains the verdict of a jury in her favor. In this case, it cannot be denied that the defendants kept and maintained a place that is within the statutory definition of a common nuisance."

See, also, *Denapolis* v. *United States* (C. C. A.), 3 Fed. (2d) 722; *Pompano Horse Club, Inc.,* v. *State, ex rel. Bryan,* 93 Fla. 415, (111 South. 801, 52 A. L. R. 51); *State, ex rel. Threlkeld, County Attorney,* v. *Osborne,* 207 Iowa, 636 (223 N. W. 363); *Forehand, Solicitor General,* v. *Moody,* 200 Ga. 166 (36 S. E. [2d] 321); *State, ex rel. Hunter, Attorney General,* v. *The Araho,* 137 Neb. 389 (289 N. W. 545).

It is specifically provided by 3 Comp. Laws 1929, § 13944, as amended by Act No. 41, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 13944, Stat. Ann. 1946 Cum. Supp. § 27.545), that the circuit court in chancery shall have jurisdiction:

"In all matters concerning nuisances and waste, where there is not a plain, adequate and complete remedy at law, and may grant injunctions to stay and prevent such nuisances and waste."

Plaintiff relies on this provision of the statute, claiming that it, in view of the declaration of the legislature in the enabling act under which the township ordinance was adopted to the effect that uses and structures maintained in violation of such ordinance shall be regarded as nuisances per se, gives to the court of equity complete jurisdiction in the premises. It must be said in this connection that there is no adequate remedy at law for the enforcement of such an ordinance. Citing 2 Story's Equity, §§ 921, 922, it was said in *Mugler* v. *Kansas, supra,* (p. 673):

"The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy, than can be had at law. They can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury."

The jurisdiction of equity to restrain a nuisance was upheld by this Court in *Board of Health of the City of Grand Rapids* v. *Vink,* 184 Mich. 688. In that case the plaintiff sought equitable relief to restrain defendant from removing and depositing garbage within the city. The Court pointed out that the averments of fact in the bill of complaint were sufficient on which to predicate a finding that a nuisance was alleged, although the term was not used. The proofs were sufficient to establish such nuisance.

It was recognized that usually courts of equity will not interfere to prevent the breach of a penal ordinance, but may properly do so under certain circumstances to prevent the continuance of a nuisance. See, also, *Building Commission of the City of Detroit* v. *Kunin,* 181 Mich. 604 (Ann. Cas. 1916 C, 959); *Stead* v. *Fortner,* 255 Ill. 468 (99 N. E. 680); *City of Stockton* v. *Frisbie & Latta,* 93 Cal. App. 277 (270 Pac. 270); *State* v. *Ellis,* 201 Ala. 295 (78 South. 71, L. R. A. 1918 D, 816). Further citations will be found in the annotation in 129 A. L. R. 890 *et seq.*

Other questions raised by counsel for defendants in their brief, and on the oral argument, do not require discussion. They have been given consideration and found to be without substantial merit. For the reasons above indicated the decree of the trial court is affirmed, with costs to plaintiff.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.